IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Criminal Case No. 15-cr-00073-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. KENNETH BREWINGTON,

    Defendant.
_____

**ORDER**
_____

    This matter comes before the Court on Defendant's Motion to Compel Brian Elrod's Emails Currently Being Withheld as Privileged [Docket No. 55]. Defendant seeks to compel production of emails produced to the government by alleged co-conspirator Brian Elrod that the government identified as privileged and to also compel production of other emails relating to the same subject matter. *Id*. at 1. Mr. Elrod is cooperating with the government and is anticipated to testify against Mr. Brewington at trial. The Court held an evidentiary hearing on defendant's motion on October 20, 2017 during which Mr. Elrod testified. Docket No. 142. Thereafter, the parties filed supplemental briefing. Docket Nos. 143, 145.

**I. BACKGROUND**

    Mr. Elrod produced emails to the government at a meeting on June 11, 2015 at the United States Department of Justice. In addition to Mr. Elrod, his criminal defense counsel, James B. Koch, and a trial attorney with the DOJ, Jennifer Ballantyne, were

present at the meeting.  Mr. Elrod testified that he produced emails to the government in two ways.  First, before the meeting, Mr. Elrod searched his email account and downloaded emails that referred to certain individuals or used certain email addresses.  He gave the downloaded emails to Mr. Koch to provide to the government.  Second, during the meeting with the government, Mr. Elrod logged into his email account and allowed a government information technology ("IT") employee to search for and download further emails.

A month and a half later, while reviewing the emails that Mr. Elrod produced, Ms. Ballantyne found emails between Mr. Elrod and Mr. Koch.  Docket No. 143-1 at 1-2, ¶ 2.  She stopped reviewing the emails, notified Mr. Koch, and put in place a team to filter those privileged emails from the collection.  *Id*., ¶¶ 2-3.  The government is withholding the emails identified as privileged by the government's filter team from production to defendant.  Docket No. 66 at 2.

At the evidentiary hearing, Mr. Elrod credibly testified that he never intended to disclose privileged emails between himself and Mr. Koch to the government.  After the hearing and with leave of the Court, the government submitted two affidavits in a supplemental brief.  In the first affidavit, Ms. Ballantyne states that, during the June 11, 2015 meeting, the government and Mr. Elrod agreed that they would only search for emails that contained the names of individuals relevant to the investigation in the emails' address fields, i.e., "to/from/cc/bcc."  Docket No. 143-1 at 1, ¶ 1.  In the second affidavit, Mr. Koch states that "[o]n each and every occasion when documents were produced, the same restriction was agreed upon between myself and the officers and agents of the DOJ which was that a list of names and / or terms could be downloaded

from Elrod's computer, thumb drives or files, but that the terms 'James B. Koch' or 'GKWW' [his law firm's acronym] whether in the To, From or Subject lines, or internally in the emails, could not be produced." Docket No. 143-2 at 2, ¶ 7.

## II. ANALYSIS

There is no dispute about whether the withheld emails are subject to the attorney-client privilege. The parties assume that they are, subject to in camera review by the Court. Instead, the issue is whether waiver of that privilege has occurred. The attorney-client privilege protects confidential communications and is "lost if the client discloses the substance of an otherwise privileged communication to a third party." *United States v. Ryans*, 903 F.2d 731, 741 n. 13 (10th Cir. 1990); *see also United States v. Bernard*, 877 F.2d 1463, 1465 (10th Cir. 1989). "The courts will grant no greater protection to those who assert the privilege than their own precautions warrant." *Ryans,* 903 F.2d at 741 n.13.

Since 2008, Fed. R. Evid. 502 has governed issues of waiver in federal proceedings. *Silverstein v. Fed. Bureau of Prisons*, No. 07-cv-02471-PAB-KMT, 2009 WL 4949959, at *10 (D. Colo. Dec. 14, 2009). "Rule 502(b) deals with whether a disclosure of privileged information constitutes an inadvertent waiver of the attorney-client privilege and work-product protection, while Rule 502(a) governs the scope of the waiver if such waiver was not ruled inadvertent." *Id*.

"A party claiming the attorney-client privilege must prove its applicability, which is narrowly construed." *In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999). In this case, the burden to show the privilege was not waived is on Mr. Elrod as the holder of the

privilege. *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 426 (D. Kan. 2009) ("The burden of showing that the privilege has not been waived remains with the party claiming the privilege." (citing *Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D. Kan. 2000))); *Silverstein*, 2009 WL 4949959, at *5 (citing *Bethel v. United States*, No. 05-cv-01336-PSF-KLM, 2008 WL 45382, at *7 (D. Colo. Jan. 2, 2008)).

### A. Waiver by Inadvertent Disclosure

Pursuant to Fed. R. Evid. 502(b), disclosure of privileged material "does not operate as a waiver in a federal or state proceeding if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error."

#### 1. Was the Disclosure Inadvertent?

The parties do not dispute that Mr. Elrod's disclosure of the privileged emails was inadvertent. Based on the evidence, including the testimony of Mr. Elrod and the affidavit of Mr. Koch, the Court agrees. *See Galena St. Fund, L.P. v. Wells Fargo Bank, N.A.*, No. 12-cv-00587-BNB-KMT, 2014 WL 943115, at *10 (D. Colo. Mar. 10, 2014) (finding inadvertent disclosure where the privileged documents were "part of a larger production which went unnoticed" (internal quotation marks omitted)).

#### 2. Did Mr. Elrod Take Reasonable Steps to Prevent Disclosure?

In determining whether a party "took reasonable steps to prevent disclosure," Fed. R. Evid. 502(b)(2), courts have looked to the processes put in place to prevent such production and the implementation of those processes. *See, e.g., Cudd Pressure Control, Inc. v. New Hampshire Ins. Co.*, 297 F.R.D. 495, 500 (W.D. Okla. 2014)

4

(ordering production where the privilege holders did not "explain their recordkeeping or review procedures with respect to privileged materials placed in general claim files, nor do they identify who was responsible for conducting the review, how much time was devoted to the task, or what criteria or methodology was used."); *Galena St. Fund, L.P.*, 2014 WL 943115, at *10 (declining to order production where the privilege claimant "established an elaborate protocol for the review and production of documents").

The methods used by Mr. Elrod to prevent disclosure are in dispute. In particular, defendant argues that the government's two affidavits should be rejected because they provide conflicting accounts of how the government searched for, and downloaded, emails from Mr. Elrod's account. Docket No. 145 at 2. Ms. Ballantyne describes a positive search restriction, i.e., that the government would download only emails sent to or sent by particular people. Docket No. 143-1 at 1, ¶ 1. By contrast, Mr. Koch describes a negative search restriction, i.e., that emails mentioning himself or his firm would be excluded. Docket No. 143-2 at 2, ¶ 7. These two affidavits are not necessarily conflicting because both positive and negative search limitations can be used in concert, in particular when doing so can aid in preventing the disclosure of privileged information. *See The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 51, 158 (2017) (discussing "categories of information that are highly likely to be privileged or protected and can be excluded from production"). Nonetheless, the Court finds the affidavits are inconsistent because they provide different accounts of what those at the meeting agreed to produce. Mr. Koch's sweeping claim that "[o]n each and every occasion" documents that referenced him or

his firm "could not be produced" is not consistent with what actually occurred, namely, the production of numerous privileged documents referencing him and his firm. Docket No. 143-2 at 2, ¶ 7; *cf. Datel Holdings Ltd. v. Microsoft Corp.,* 2011 WL 866993, at *4 (N.D. Cal. Mar. 11, 2011*)* (finding that a software malfunction leading to the disclosure of privileged documents did not render the steps taken to prevent disclosure unreasonable). Further, Mr. Koch does not disclose any mechanism or safeguards put in place to prevent such production. *See Williams v. D.C.*, 806 F. Supp. 2d 44, 50 (D.D.C. 2011) ("The general statement that a privilege review was performed, without any supporting details, is completely uninformative."). By contrast, Ms. Ballantyne's statement is reconcilable with the disclosures that occurred and consistent with Mr. Elrod's testimony. Mr. Elrod testified that particular names were searched for, but he made no reference to excluding names or terms, either when downloading emails himself or in reference to the government's IT employee. Therefore, the Court resolves the discrepancy in favor of Ms. Ballantyne's description of the means used to prevent disclosure of privileged emails.

The government argues that it took reasonable steps to prevent disclosure of privileged emails because searching by the names of individuals in the emails' address fields was reasonably calculated to prevent disclosure of privileged emails. Docket No. 143 at 2. The Court agrees with the government in part. Searching Mr. Elrod's email account for emails sent to or sent by particular people was a reasonable means to prevent the disclosure of attorney-client communications. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008) (affirming that privilege was not waived where there was "nothing clearly inadequate

about the [production] process described" in the privilege holder's affidavit). There is no reason to believe that Mr. Elrod and Mr. Koch exchanged privileged emails that had other recipients whose names would have been searched. That such searches were performed by a government IT employee provides some assurance that privileged documents would not be produced and that government counsel would not be exposed to privileged information. *See Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 260 (D. Md. 2008) ("While keyword searches have long been recognized as appropriate and helpful for ESI search and retrieval, there are well-known limitations and risks associated with them, and proper selection and implementation obviously involves technical, if not scientific knowledge." (citations omitted)).

However, the Court does not agree that Mr. Elrod took reasonable precautions with respect to the emails that he downloaded. He testified that, in downloading emails himself, he searched for both email addresses and names of individuals relevant to the investigation. Neither he nor the government provided any evidence that such searches were restricted to the emails' address fields. *See Amobi v. D.C. Dep't of Corr.*, 262 F.R.D. 45, 54 (D.D.C. 2009) (finding privilege waived where the privilege holders did "not provide the court with any indication of the methodology used to review documents for privilege, but only vaguely refer to several reviews of the documents to be produced."). Such a search would have located privileged emails referring to any of the searched names, such as those documents that were ultimately disclosed. Further, there is no indication that Mr. Elrod, Mr. Koch, or the government screened the emails that Mr. Elrod downloaded in any way before they were produced. *See Mt. Hawley Ins.*

*Co. v. Felman Prod., Inc.*, 271 F.R.D. 125, 136 (S.D.W. Va. 2010) (finding precautions were not reasonable where the privilege holder failed to "test the reliability of keyword searches" (citing *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 262 (D. Md. 2008)).

### 3. Steps Taken to Rectify the Error

Defendant argues that Mr. Elrod has failed to take reasonable steps to rectify the production of privileged documents because he did not personally, or through his attorney, act to rectify the production of privileged materials, but instead allowed the government to take remedial steps. Docket No. 145 at 4-5; *see* Fed. R. Evid. 502, Advisory Committee Notes of Subdivision (b) ("The rule does not require the producing party to engage in a post-production review to determine whether any protected communication or information has been produced by mistake. But the rule does require the producing party to follow up on any obvious indications that a protected communication or information has been produced inadvertently."). The Court finds that, under the circumstances, Mr. Elrod's actions in allowing the government to perform a privilege review is consistent with maintaining his privilege. In the context of criminal investigations, the government frequently conducts privilege reviews of seized documents to avoid intruding into suspects' attorney-client privilege. *See, e.g., United States v. Johnson,* 2016 WL 297451, at *5 (D. Utah Jan. 22, 2016) (finding a suspect's attorney-client privilege appropriately protected where a prosecutor "ceased review once she" discovered a single privileged document and "did not review any further documents" until government put in place a "taint team" to perform a privilege review);

8

*United States v. Taylor*, 2010 WL 2924414, at *2 (D. Me. July 16, 2010) (approving the government's use of a "'filter AUSA' who has not been, and will not be, involved in prosecution of the instant matter" to conduct a privilege review of seized documents). Although the documents here were produced voluntarily, Mr. Elrod could reasonably consent, after Ms. Ballantyne brought the issue to Mr. Elrod's attention, to the government performing the privilege review to rectify the production error because the government was already in possession of the produced materials. *See In re Grand Jury Subpoenas*, 454 F.3d 511, 522-23 (6th Cir. 2006) (Where "potentially-privileged documents are already in the government's possession, . . . the use of the taint team to sift the wheat from the chaff constitutes an action respectful of, rather than injurious to, the protection of privilege." (citing *United States v. Abbell*, 914 F. Supp. 519 (S.D. Fla. 1995))). Accordingly, the Court finds that Mr. Elrod took reasonable steps to rectify the production error.

Applying Fed. R. Evid. 502(b) to the above findings, the Court determines that Mr. Elrod has waived his privilege with respect to the documents that he downloaded himself, but not with respect to those that were downloaded by the government's IT employee. Therefore, the Court will order the production of those documents that Mr. Elrod downloaded himself on the grounds that he has waived his attorney-client privilege.[1]

---

[1] Because the burden rests with Mr. Elrod, if Mr. Elrod and the government cannot determine conclusively whether the government's IT employee downloaded a particular email, then the government shall produce the document to defendant.

## B. Subject Matter Waiver by Intentional Disclosure

Pursuant to Fed. R. Evid. 502(a), a waiver of attorney-client privilege "extends to an undisclosed communication or information in a federal or state proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Based on Mr. Elrod's testimony and Mr. Koch's affidavit, the Court finds that Mr. Elrod did not intentionally waive his attorney-client privilege with respect to the produced emails. *See First Am. CoreLogic, Inc. v. Fiserv, Inc.*, 2010 WL 4975566, at *5 (E.D. Tex. Dec. 2, 2010) (declining to find subject matter waiver due to an unintentional disclosure of privileged documents under Fed. R. Evid. 502(a)(1) despite finding the privilege was waived under Fed. R. Evid. 502(b)). Therefore, the Court will deny defendant's motion insofar as it seeks production of undisclosed communications that concern the same subject matter as Mr. Elrod's emails.

## III. CONCLUSION

Wherefore, it is

**ORDERED** that Defendant's Motion to Compel Brian Elrod's Emails Currently Being Withheld as Privileged [Docket No. 55] is **GRANTED** in part and **DENIED** in part as set forth in this order. It is further

**ORDERED** that the government shall produce those emails of Brian Elrod that are being withheld as privileged that were downloaded by Mr. Elrod for production to the government.

DATED February 26, 2018.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge